In re AL'S DEN, INC., a Hawaii corporation, dba King's Pub, Debtor.

In re Barbara J. KREWSON, aka Barbara Joyce Krewson, Debtor.

In re Geraldine Maile WINWARD, Debtor.

Bankruptcy Nos. 87–00494, 87–00492 and 87–00493.

United States Bankruptcy Court, D. Hawaii.

Nov. 12, 1987.

**48**

Thomas Young, Honolulu, Hawaii, for Simone.

Robert J. Faris, Honolulu, Hawaii, for debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION FOR RELIEF FROM STAY

JON J. CHINEN, Bankruptcy Judge.

The "Petition to Lift Stay of the Circuit Court of the First Circuit, Civil No. 85–4067," filed by William Simone ("Simone") on August 26, 1987, was the subject of a preliminary hearing held on September 23, 1987 and a final hearing on October 13, 1987. At the hearings, Thomas Young, Esq. represented William D. Simone ("Simone") and Robert J. Faris, Esq. represented the debtors, Barbara J. Krewson ("Krewson"), Geraldine Maile Winward ("Winward"), and Al's Den, Inc., a Hawaii corporation ("Al's Den"). Krewson, Winward and Al's Den are hereafter jointly referred to as "debtors". Following the hearing, the Court took the matter under advisement.

Based upon the evidence presented, the memoranda filed, the records in the case and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Al's Den is a Hawaii corporation, duly incorporated and authorized to do business in the State of Hawaii. Krewson, Winward and Simone are all residents of the City and County of Honolulu, State of Hawaii.

2. Al's Den is the sublessee of certain premises (the "Premises") located at 441 Walina Street, Honolulu, Hawaii, pursuant to a sublease, dated October 8, 1970, by and between Pathway, Inc. ("Pathway"), as sublessor, and Crown Cocktail Lounge, Inc., as sublessee. Crown Cocktail Lounge, Inc., assigned the sublease to Al's Den by instrument dated March 16, 1977.

3. The land upon which the Premises are situated has been registered in the Land Court of the State of Hawaii pursuant to the provisions of Chapter 501 of the Hawaii Revised Statutes. The sublease was never filed in the Land Court or noted on the Transfer Certificate of Title pertaining to that property.

4. Pathway commenced a voluntary Chapter 11 case on May 3, 1982, which is still pending before this Court, *In re Pathway, Inc.*, Case No. 82–00253.

5. In early 1983, Krewson and Winward were both employed as bartendresses and assistant managers by Al's Den which operated The Waikiki Pub. They both worked under the supervision of Simone, who was the sole stockholder of Al's Den. In the spring of 1983, Simone approached Krewson and Winward and offered to sell "the bar" to them. Simone told Krewson and Winward that he wanted to sell the bar to them because they had helped him build up the bar's business and that they were "like family". He told them that purchasing the bar would be a "good deal" because the bar had a lease at a low, fixed rent of approximately $630.00 a month for twelve more years, and that the lease "was untouchable." The bar is located in Waikiki and has a seating capacity for 35 patrons. Simone also told Krewson and Winward that twelve parking stalls came with the bar under the lease, although the lease contains no such provision.

6. Krewson and Winward were reluctant to purchase the bar, especially since they were concerned about their financial ability to pay for the bar. When they told Simone that they did not have the money to buy the bar, Simone told them that, if they each put down $5000.00, he would sell them the bar. Simone also told Krewson and Winward that, if they could not pay for the bar, he would "just take it back".

7. Because of the statements and promises made by Simone over a period of a month when he kept pressing them to purchase the bar, Krewson and Winward eventually agreed to purchase the "bar and sublease". Krewson and Winward met with Simone and his lawyer for lunch on April 8, 1983. Simone then showed Krewson and Winward for the first time, the

Stock Purchase Agreement, a Promissory Note in the original principal amount of $100,000.00, a second note in the amount of $15,122.00, and a document entitled "Joint Closing Instructions", among other documents. Krewson and Winward did not have an attorney or anyone else review any of the documents on their behalf.

8. After the sale transaction had been completed, Simone told Cindy Hayworth, a bartendress working at the bar, that he was a "nice guy" because, though he had sold the bar to Krewson and Winward, he promised to take it back if they were unable to make payments.

9. Subsequent to signing the agreement, until 1985, Krewson and Winward paid a total of $68,698.47 to or for the account of Mr. and Mrs. Simone under the Stock Purchase Agreement. This sum includes the $10,000.00 down payment, $8,160.00 of "consulting fees," $40,997.61 of installments under the $100,000.00 note, $9,418.64 of installments under the $15,122.00 note, and an amount of $122.22 due to the Internal Revenue Service which accrued prior to the Stock Purchase Agreement and which was Simone's obligation to pay.

10. Meanwhile, in late 1983, Pathway, the sublessor of the Premises, which had filed for relief in 1982, applied to sell its interest in the sublease to AFI. Though Pathway was aware of the claim of Al's Den in the sublease, Pathway did not give notice of the proposed sale to Al's Den. After a hearing, this Court on December 5, 1983 entered its Order Approving the Sale "Free and Clear of All Liens and Encumbrances, except those of Record".

11. Krewson and Winward first learned of the sale of the sublease to Waikiki Partners AFI ("AFI") in December of 1984. AFI attempted to negotiate a settlement, but Krewson and Winward refused.

12. In May of 1985, the debtors received a demand from AFI that the debtors vacate the premises immediately. The debtors then retained counsel and ceased making payments to Mr. and Mrs. Simone for they believed that, if the lease were invalid, Simone had breached his representation that the sublease *was* valid, and that therefore the debtors did not owe the Simone any more money.

13. Thereafter, Simone brought an action in the state circuit court, *Simone v. Krewson, et al*, CA 85–4067 to cancel the Stock Purchase Agreement and to collect damages.

14. Then, on January 24, 1986, AFI brought in the Land Court of the State of Hawaii its Petition for Issuance of (1) Order Confirming Title; (2) Writ of Possession; (3) Order to Show Cause.

15. On January 28, 1986, counsel for the debtors sent to counsel for Simone the documents served upon the debtors by AFI and demanded that Simone defend the action.

16. On January 29, 1983, counsel for Simone replied to debtors' counsel and stated "We intend to defend this matter vigorously" and requested certain affidavits from Krewson and Winward. And, Simone did defend against AFI's petition in the state court action, including the hearing in the State Supreme Court.

17. The debtors filed their petitions on June 23, 1987. Simone then filed his Petition to Lift Stay on August 26, 1987.

18. One of the issues in the Petition to Lift Stay was whether the unrecorded sublease was valid and binding upon AFI, when it was aware of such unrecorded sublease. After a hearing at which Simone, the debtors and AFI were represented by counsel, this Court held that, under the ruling of the State Supreme Court, notice of an unrecorded sublease on the part of the purchaser who otherwise did not participate in any fraud was not sufficient to hold the purchaser as not a purchaser in good faith. This Court thus held the unrecorded lease invalid so far as AFI was concerned.

19. Simone contends that Krewson and Winward who purchased all of the stock in Al's Den owe him a total of $150,000.00. And, that said sum is secured by the stock of Al's Den. Simone further contends that, because Krewson and Winward had not

paid anything since August of 1985, he is not adequately protected.

20. Simone requests that the automatic stay be lifted so that he may proceed with the state court action in C.A. 85–4067, to cancel the Stock Purchase Agreement and to collect damages. Simone further contends that the Stock Purchase Agreement contains the entire agreement and that it does not contain any warranty.

21. The debtors contend that, because Simone has breached the provisions of the Stock Purchase Agreement and have made certain representations to them upon which they had relied, they do not owe Simone any money and, instead, Simone is liable to them. The debtors request this Court to find the Stock Purchase Agreement to be invalid, their counterclaim against Simone to be valid and to deny the motion to lift stay.

22. To the extent that any of the foregoing findings of fact constitute conclusions of law, they shall so be considered.

## CONCLUSIONS OF LAW

1. 11 U.S.C. Section 362(d) provides for relief from stay under certain conditions:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

3. The Ninth Circuit Court has clearly enunciated that the issues to be determined at a hearing on a motion to modify or lift stay are limited. In *In re Johnson,* 756 F.2d 738, 13 B.C.D. 431, 12 C.B.C.2d 573 (9th Cir.1985), *cert. den.,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72, the Court stated:

Stay litigation is limited to issues of the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization. Hearings on relief from the automatic stay are thus handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing. The action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert a counterclaim. *In re Essex Properties, Ltd.,* 430 F.Supp. 1112 (N.D.Cal.1977). Thus, the state law governing contractual relationships is not considered in stay litigation. (citations omitted.)

4. In the instant case, the debtors contend that, because Simone has breached warranties and has made misrepresentations to them, the security interest claimed by Simone is unenforceable and that, thus, they are not liable to Simone. The debtors contend that, instead, Simone is liable to them. In effect, the debtors are requesting this Court to determine the validity of Simone's claim against them and the validity of their claim against Simone under Hawaii's contract law before deciding whether to modify the automatic stay.

5. Under *In re Johnson,* in a hearing on a motion for relief from stay, this Court has no authority to determine whether Simone has a valid claim against debtors or vice versa. Such issues have been raised in the state court action, C.A. 85–4067 and are ready for trial. Thus, it is only proper that those issues under Hawaii's contract laws be determined by the state court. The only issue before this court may be summarized as follows: is there cause to modify or lift the automatic stay.

6. Simone has proven that, under the Stock Purchase Agreement, debtors owe him over $150,000.00. Debtors have not paid Simone since August of 1985, while continuing to occupy and use the bar until directed to vacate the bar by this Court a few months ago.

7. Debtors have not provided any means of adequate protection to Simone. The Court is thus compelled to modify the

automatic stay to permit Simone to continue with C.A. 85–4067 in the state court. However, there shall be no execution of any monetary judgment against the debtors or debtors' estates without the prior approval of this Court.

An Order will be signed upon presentment.